**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JANE DOE, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | ) | |
| **Plaintiff,** | ) | **Case No.** 3:24-cv-02166-NJR |
| **vs.** | ) | |
| **PINCKNEYVILLE COMMUNITY HOSPITAL DISTRICT D/B/A PINCKNEYVILLE COMMUNITY HOSPITAL,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. STANDARD ........ 5

IV. ARGUMENT ........ 6

A. Plaintiff's Claims Are Not Precluded By Her Contract Claim ........ 6

i. Defendant Owed a Duty to Protect Patients' Confidential Information ........ 7

ii. Plaintiff Properly Pleaded Breach of Contract ........ 8

iii. Plaintiff Properly Pleaded Unjust Enrichment ........ 9

B. Plaintiff Properly Pleaded Economic Injury And Breach Of Contract ........ 10

C. Plaintiff Properly Pleaded Invasion Of Privacy ........ 12

i. Defendant intentionally intruded on plaintiff's seclusion ........ 12

ii. Defendant's intrusion was into private matters that are highly offensive ........ 13

D. Plaintiff Properly Pleaded Bailment ........ 14

E. Plaintiff Properly Pleaded Violation Of The Illinois Eavesdropping Statute ........ 15

F. Plaintiff Properly Pleaded Violation Of The Electronic Communications Privacy Act 17

G. Plaintiff Properly Pleaded Violation Of The Computer Fraud And Abuse Act ........ 18

H. Plaintiff Properly Pleaded Her Class Action Claims ........ 20

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*,
2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ....2, 7, 10, 15

*ACI Payments, Inc. v. Conservice, LLC*,
2022 WL 622214 (D. Utah Mar. 3, 2022) ....19

*ACW Flex Pack LLC v. Wrobel*,
2023 WL 4762596 (N.D. Ill. July 26, 2023)....19

*Anaya v. Birck*, 2024
WL 2209345 (N.D. Ill. May 16, 2024) ....20

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Brooks Group & Assocs. v. LeVigne,*
*2014 U.S. Dist. LEXIS 52479 at *35 (E.D. Pa. Apr. 15, 2014)* ....18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5

*Busse v. Motorola, Inc.,*,
351 Ill. App. 3d 67 N.E.2d 1013 (Ill. App. Ct. 2004)....13

*Cedar Hill Assocs. v. Paget*,
2005 U.S. Dist. LEXIS 32533 (N.D. Ill. Dec. 9, 2005)....17, 18

*Conley v. Gibson*,
355 U.S. 41 (1957)....6

*Coy v. Washington Cnty. Hosp. Dist.*,
372 Ill. App. 3d 1077 (2007) ....1

*Doe v. Chao*,

540 U.S. 614 (2004)....................17

*Doe v. Tenet Healthcare Corp.*,

731 F. Supp. 3d 142 (D. Mass. 2024)....................17

*Farmers Ins. Exch. v. Auto Club Grp.*,

823 F. Supp. 2d 847, 852 (N.D. Ill. 2011)....................*18*

*Flores v. Aon Corp.*,

2023 IL App (1st) 230140....................*passim*

*Geisberger v. Willuhn*,

72 Ill. App. 3d 435 (1979)....................11

*Griffith v. TikTok, Inc.*,

2023 U.S. Dist. LEXIS 223098 (C.D. Cal. Dec. 13, 2023)....................19

*Hartley v. University Of Chicago Medical Center, et al.*,

2024 WL 1886909 (N.D. Ill. Apr. 30, 2024)....................2, 10, 15

*Kirby v. Chicago City Bank*,

82 Ill. App. 3d 1113 (App.Ct.Ill. 1980)....................14

*Krupa v. TIC Int'l Corp.*,

2023 WL 143140 (S.D. Ind. Jan. 10, 2023)....................*passim*

*Kunkel v. Walton*,

179 Ill. 2d 519 (1997)....................2

*Kurowski v. Rush*,

2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................2, 5, 10, 15

*Kurowski v. Rush*,

2024 WL 3455020 (N.D. Ill. July 18, 2024)....................2, 10, 15, 16

*Kurowski v. Rush*,

659 F. Supp. 3d 931 (N.D. Ill. 2023)....................2

*Kurowski v. Rush*,

683 F. Supp. 3d 836 (N.D. Ill. 2023)....................2, 15

*Lewis v. State*,

38 Ill. Ct. Cl. 254 (1985)....................15

*Lozada v. Advoc. Health & Hosps. Corp.*,

2018 IL App (1st) 180320-U ....................2

*Moonlight Mt. Rec. v. McCoy*,

2024 WL 4027972 (D. Idaho Sept. 3, 2024)....................20

*Moorman Manufacturing Co. v. National Tank Co.*,

91 Ill. 2d 69 (1982) ....................6, 7

*Murdock-Alexander v. Tempsnow Emp.*,

2016 WL 6833961 (N.D. Ill. 2016) ....................3

*Norfolk Cnty. Ret. Sys. v. Ustian*,

2009 WL 2386156 (N.D. Ill. July 28, 2009)....................6

*Posner v. Davis*,

76 Ill. App. 3d 638 (1979) ....................11

*Reyes v. City of Chicago*,

585 F. Supp. 2d 1010 (N.D. Ill. 2008) ....................6

*Simpson v. Dart*,

23 F.4th 706 (7th Cir. 2022) ....................20

*Smith, et al. v. Loyola University Medical Center,*

2024 WL 3338941 (N.D. Ill. July 9, 2024).................... *passim*

*Spiegel v. McClintic*,

916 F.3d 611 (7th Cir. 2019) ....................12

*In re Toys R Us, Inc., Priv. Litig.*,

2001 WL 34517252 (N.D. Cal. Oct. 9, 2001)....................19

*United States v. Thompson*,

2022 WL 834026 (W.D. Wash. Mar. 21, 2022) ....................19

*Wallis v. Levine*,

2013 WL 53896 (N.D. Ill. Jan. 2, 2013), *aff'd*, 2013 WL 5345502 (7th Cir. June 11, 2013)...3

*Wolfe v. Schaefer*,

619 F.3d 782 (7th Cir. 2010) ....................................................................................1

*Yates v. El-Deiry*,

160 Ill. App. 3d 198 (1987) ....................................................................................13

*Zak v. Bose Corp.*,

2019 U.S. Dist. LEXIS 54871 (N.D. Ill. Mar. 31, 2019)....................................15, 16

**Statutes**

720 ILCS 5/14-2 ....................................................................................16

720 ILCS 5/14-2(a)(2) ....................................................................................16

720 ILCS 5/14-6 ....................................................................................16

18 U.S.C.A. § 2707(c) ....................................................................................17

Computer Fraud And Abuse Act ....................................................................................18

Eavesdropping Act....................................................................................16

Electronic Communications Privacy Act....................................................................................17, 18

Information Protection Act ....................................................................................7

**Other Authorities**

Certified, 7AA Fed. Prac. & Proc. Civ. § 1785 (3d ed.)....................................................20

Rule 8(a)(2)....................................................................................5

Rule 12(b)(6)....................................................................................6

Rule 23(a) and Rule 23(b)....................................................................................20

## I. INTRODUCTION

Defendant Pinckneyville Community Hospital District d/b/a Pinckneyville Community Hospital ("Defendant") purposefully installed third-party trackers on its website. When patients like Jane Doe ("Ms. Doe" or "Plaintiff") visited the website, including authenticated portions like the patient portal, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications to third parties, like Facebook and Google, without patient consent or knowledge.[1]

This case does **not** arise from the use of a public website, and Plaintiff does not create a false impression of anything. Ms. Doe did not voluntarily enter public information on a public website. No, she communicated confidential patient information to her medical provider, under its promises of confidentiality. She did *not* "voluntarily" disclose her information to third parties. She **did not consent** to a hidden wiretap on her electronic communications with her medical provider. Who would? No patient expects that their medical provider shares their private medical information with *any* third party without their consent—much less with strangers and huge social media companies.

The Seventh Circuit "recognize[s] a constitutional right to the privacy of medical [information]." *Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010). Likewise, "Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical

---

[1] Defendant argues that this is not a data breach "cyber-breach" or "cyber-crime" case. First, just because Defendant does not recognize its actions as criminal does not make them so. Furthermore, Plaintiff did not allege a "data breach," and data breach is not the only type of claim that courts recognize. Instead, Plaintiff alleged that Defendant **deliberately** disclosed her information to third parties. Defendant is arguably *more* liable for its *intentional* actions of installing secret recording trackers on its healthcare website than a company that was hacked.

information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. "The confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy." *Kunkel v. Walton*, 179 Ill. 2d 519, 537 (1997). Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiffs' personal, private, confidential health information to third parties.

**In the same context as this case**, Illinois state courts, Illinois federal courts—**including no less than four separate Northern District of Illinois Courts**—the Seventh Circuit, and courts across the country all agree—claims like Plaintiffs' are legally valid. *See, e.g., Kurowski v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's motion for judgment on the pleadings and allowing claims to proceed); *Kurowski v. Rush*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (same, on motion to dismiss); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center,* 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley II*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* Exhibit A-1 (listing **over eighty** orders denying motions to dismiss in healthcare online tracking technology cases with identical allegations and

identical claims to those here).[2]

Defendant presents no valid legal reason why Plaintiff's claims should be dismissed. Plaintiff sufficiently stated her claims. Defendant failed to meet its heavy burden, and Plaintiff asks that this Court deny Defendant's motion to dismiss in its entirety.

## II. FACTUAL BACKGROUND

Defendant is a trusted Illinois healthcare provider. Class Action Complaint, DE 1, ("Compl.") ¶¶ 38-44. Plaintiff is Defendant's patient and received healthcare services from Defendant, including emergency room treatment, surgeries, and primary care treatment. *Id.* ¶¶ 129-40. As part of Plaintiff's medical care, at Defendant's direction and encouragement, **Plaintiff relied on Defendant's website to communicate confidential patient information,**[3] including: to find medical providers; to research treatments; to search for treatment information; to pay for medical services; using the patient portal to schedule appointments, review test results, and more. *Id.* Plaintiff reasonably expected that these communications with Defendant were confidential and would not be transmitted to or intercepted by a third party—in essence, that the information would be safeguarded according to Defendant's privacy policies and the law. *Id.*

Defendant accuses Plaintiff of using "loaded terms," "an avalanche of immaterial allegations," "vague medical terms," and creating "the illusion of impropriety by volleying loaded terms." None of Defendant's accusations are founded. Characterizing Plaintiff's information as

---

[2] Plaintiff asks the Court to take judicial notice of the orders listed in Exhibit A, and of the holdings in those orders. *See, e.g.*, *Wallis v. Levine*, 2013 WL 53896, at *1 n.1 (N.D. Ill. Jan. 2, 2013), *aff'd*, 2013 WL 5345502 (7th Cir. June 11, 2013) ("the orders of numerous state and federal courts [are] matters of public record of which the court takes judicial notice").

[3] Defendant argues that Plaintiff did not allege specific dates of use, searches, or results. No such heightened pleading standard applies here. *See, e.g.*, *Murdock-Alexander v. Tempsnow Emp.*, 2016 WL 6833961, at *7 (N.D. Ill. 2016) ("The Court rejects [d]efendants' challenge to [p]laintiff's failure to provide the 'specific dates or times'") (collecting cases). Defendant is secretly tracking Plaintiff's activity so it presumably knows this information anyway.

public information "voluntarily input" on Defendant's "public website" is Defendant itself creating an illusion. Yes, Plaintiff "voluntarily" entered her **private medical** information on Defendant's website—just as she would have in a physical medical facility—but **she did not consent to a hidden wiretap disclosing her communications to third parties.** These allegations create no false impression that Defendant disclosed protected medical information, and instead depict the reality of Defendant's secret disclosure of Plaintiff's protected medical information.

Defendant maintains privacy policies found on its website ("Privacy Policies"). *Id.* ¶¶ 87-95. Therein, **Defendant affirmatively and explicitly promises**, "**[i]n these cases we never share your information unless you give us written permission: • Marketing purposes • Sale of your information**" *Id.* ¶ 91. Plaintiff **did not consent to Defendant's Disclosure** of her Private Information to third parties for marking or sales purposes. *Id.* ¶¶ 13, 230, 311, 348. Unfortunately, Defendant **does** share protected health information without written authorization. *Id.* ¶¶ 1, 25. Defendant does so via "trackers" or "tracking technologies," that it knowingly configured and implemented into its Website. *Id.* ¶¶ 1, 10, 13. These trackers collected and transmitted patients' Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to Facebook, Google DoubleClick, The Trade Desk, Frequence, and potentially others, without Plaintiff's or patients' knowledge or authorization ("the Disclosure"). *Id.* ¶¶ 1, 10. 25.

The Private Information Defendant disclosed included patients' browsing activities, including the pages and content they viewed and the buttons they clicked; their seeking of medical treatment; information concerning their statuses as patients; patient portal activities; information concerning their medical conditions such as the providers they searched for and viewed and the medical services they viewed; the specialties of the medical providers they searched for and

viewed; the search results they clicked on; as well as their identifying information. *Id.* ¶¶ 21, 138. **This information is private medical information that is legally protected.**[4]

Defendant's Disclosure to Third Parties was for the purpose of marketing its services, enhancing marketing efforts, and bolstering its profits. *Id.* ¶¶ 1, 14, 20, 29, 46. The Third Parties, in turn, sold Plaintiff's Private Information to fourth parties. *See e.g.*, *id.* ¶ 20. As a direct result of Defendant's and the Third Parties' sale of her Private Information, Plaintiff receives targeted advertisements directly related to the treatment she sought from, and Private Information she shared with, Defendant. *Id.* ¶ 132. Because of Defendant's actions, Plaintiff suffered concrete injuries, not "a series of conclusory allegations" or "theoretic harms." Plaintiff's injuries include loss of privacy, monetary damages, statutory damages, unauthorized disclosure of (and access to) her Private Information to/by third and fourth parties, use of her Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution of the value of her Private Information, the portion of Defendant's revenues, profits, and savings in marketing costs attributable to collecting Plaintiff's Private Information without authorization and sharing it with third (and fourth) parties, statutory damages, lost benefit of the bargain, and increased risk of future harm from further unauthorized use and disclosure of her information. *Id.* ¶¶ 140, 151, 161.[5]

## III. STANDARD

Rule 8(a)(2) requires only a short and plain statement of the claim, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

[4] In its "facts," Defendant asserts that it did not disclose legally protected information, but it offers no authority to support this, and as discussed further below, Defendant is wrong.

[5] Defendant also makes an outside-the-pleadings argument that its Disclosure is not the cause of the advertisements Plaintiff receives. This is inappropriate on motion to dismiss. *See, e.g.*, *Kurowski III*, at *3 (where plaintiff "alleges that this information was, in turn, used by at least Facebook to target her with particular advertising associated with her particular health conditions," the court should reject defendant's "dispute that this is what actually happens" because "the Court cannot adjudicate that sort of factual dispute on a motion to dismiss for failure to state a claim").

550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion "does not require 'detailed factual allegations'"; it merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must "accept[] the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor." *Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *3 (N.D. Ill. July 28, 2009). "[D]efendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008).

## IV. ARGUMENT

### A. PLAINTIFF'S CLAIMS ARE NOT PRECLUDED BY HER CONTRACT CLAIM

Defendant argues that Plaintiff's admitted contract precludes her negligence, breach of implied contract, and unjust enrichment claims, asserting the economic loss doctrine from *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88 (1982). MTD pp. 7. The Court should reject Defendant's argument for two reasons. First, the duty that Defendant breached does not arise from any express contract; second, Plaintiff seeks damages beyond pure economic loss.

In *Flores*, the Illinois Court of Appeals rejected an argument based on the economic loss rule in the context of a data breach. As *Flores* observed, "the Illinois Supreme Court [has] held that the doctrine applies to the service industry only where the duty of the party performing the service is defined by a contract executed with the client... [that] reasoning equally applies to data breach cases" 2023 IL App (1st) 230140 ¶ 57. "Since plaintiffs' common law tort claims are based on defendant's common law duty to safeguard personal information…the *Moorman* doctrine does not prohibit plaintiffs from bringing their claims." *Id*. The same is true here.

Additionally, *Moorman* recognized a duty is independent of a contract where a plaintiff's damages were caused by a defendant's intentional false representation. *Moorman*, 91 Ill. 2d at 89.

This is especially applicable here because Defendant made (false) affirmative representations to Plaintiff and the Class, who are its patients, that it was not collecting or selling their personally identifying information for its own profit when it was, in fact, employing tracking technologies to do just that. Compl. ¶ 95. Thus, the exception to the *Moorman* rule also independently precludes the economic loss doctrine from negating Plaintiff's negligence claims.[6]

Yet further, the damages Plaintiff claims are not purely economic loss. For purposes of the economic loss rule "[e]conomic loss is defined as 'damages for inadequate value…without any claim of personal injury or damage to other property.'" *Flores* ¶ 56. But Plaintiff's damages here include "embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 140. The economic loss rule does not bar such damages. Defendant's argument fails. Defendant states that, even if the economic loss doctrine does not bar Plaintiff's claims, Plaintiff does not and cannot plead the elements of a cognizable claim under Illinois law. MTD pp. 8. This argument also fails.

*i. Defendant Owed a Duty to Protect Patients' Confidential Information*

Plaintiff has pleaded that Defendant owed a duty to exercise reasonable care in handling and using her Private Information in its care and custody. *See* Compl. ¶ 223. Illinois courts have repeatedly recognized such allegations establish a duty in negligence. *See Aspen Dental*, at *9 ("[defendant] collected [p]laintiffs' nonpublic personal information and disseminated that information to unauthorized third parties…plausibly alleg[ing] a duty to prevent the disclosure of their private health information."); *Loyola*, at *7 (cleaned up) ("the Illinois legislature…created a duty that requires data collectors to maintain reasonable security measures under the Information Protection Act...[defendant] collected the plaintiffs' nonpublic personal information and disseminated that information to unauthorized third parties. Thus, the complaint plausibly alleges

---

[6] Defendant's citation to the *Genesis* case is unavailing, as an Amended Complaint was filed in that case, reasserting negligence claims, and the Motion to Dismiss is not yet even ripe.

a duty to prevent the disclosure of their private health information.") (citing *Flores*, ¶23; *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) ("*Gallagher*"), *In re Mondelez Data Breach Litig.*, 2024 WL 2817489, at *4 (N.D. Ill. June 3, 2024) and *Wittmeyer v. Heartland All. For Hum. Needs & Rts.*, 2024 WL 183311, at *2 (N.D. Ill. Jan. 17, 2024); 815 ILCS 530/45)); *Krupa*, 2023 WL 143140. Without analysis and relying only on a string cite of cases, Defendant states that "Illinois has not recognized an independent common law duty to safeguard personal information." MTD pp. 8. Defendant's statements are not backed by analysis or logic and should be rejected.

*ii. Plaintiff Properly Pleaded Breach of Contract*

Defendant argues that Plaintiff "does not plead the requisite elements of an implied contract – namely a meeting of the minds, consideration and economic damages." MTD pp. 9. Defendant simply ignores the allegations in the Complaint. First, Plaintiff sufficiently plead a meeting of the minds and consideration when she alleged that she paid monies for treatment received, and entrusted her Private Information to Defendant. Compl. ¶ 271. In exchange, Defendant agreed to provide medical care and treatment and promised it would not disclose Plaintiff's and the Class Private Information, including PHI, except as authorized. *Id.* ¶ 273-275. Indeed, Defendant assured its patients that there are limited ways it is permitted to use and disclose PHI, such as for treatment, payment, and healthcare operations. Compl. Ex. B. Therefore, contrary to Defendant's baseless claims in its Motion to Dismiss, Plaintiff sufficiently alleged both a meeting of the minds and that Plaintiff she paid consideration for Defendant's services, including its protection of her PHI.

Finally, Defendant argues Plaintiff failed to plead monetary damages. However, Plaintiff did plead monetary damages in the Complaint when she stated, "Plaintiff and the Class have suffered (and will continue to suffer) injury-in-fact and damages, **including . . . monetary damages**..." (emphasis added) Compl. ¶ 279; see also § IV.B *infra* (discussing contract claim).

*iii. Plaintiff Properly Pleaded Unjust Enrichment*

As the Illinois Court of Appeals held in *Flores*, a plaintiff "state[s] a cause of action based on a theory of unjust enrichment" if they "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37 (quoting *HPI Health Care Serv.'s v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989)). Plaintiff alleged just that here: she conferred her Personal Information upon Defendant, who promised it would not it, that Defendant then disclosed her Personal Information, and that it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiff's Personal Information under the premise of the promise of not disclosing it. Compl. ¶¶ 281-288. These allegations are sufficient under Illinois law to "plausibly suggest that [Defendant] retained a measurable benefit and that the retention of that benefit was unjust." *See Doe v. Tenet Healthcare Corp., 731 F. Supp. 3d 142, 151 (D. Mass. 2024)*.

Plaintiff specifically alleges, for example, that Plaintiff paid Defendant for medical services. Compl. ¶¶ 140, 263, 271, 286; *see also* ¶ 283 (alleging that "Plaintiff and Class Members conferred a monetary benefit upon Defendant in the form of valuable sensitive medical information—Private Information."). These direct payments from Plaintiff to Defendant distinguish this case from *Flores*, where the court held that plaintiffs did not adequately plead that they had conferred a benefit on the defendant because "the payments of premiums for defendant's insurance services were made by plaintiffs' employers, not plaintiffs themselves, and therefore were not benefits conferred by plaintiffs." *Flores* at ¶ 38. The Complaint also adequately alleges that "defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37. They "would not have used Defendant's services, or would have paid less for those services, if they had known that Defendant would collect, use, and disclose their

Private Information to third parties." Compl. ¶ 284. Defendant has failed to meet its burden. Plaintiff has plausibly alleged a claim for unjust enrichment. Defendant's motion must be denied.

### B. PLAINTIFF PROPERLY PLEADED ECONOMIC INJURY AND BREACH OF CONTRACT

Plaintiff sufficiently "alleges that Pinckneyville in fact tracked and disclosed her medical treatment information" (MTD p. 11); Plaintiff clearly alleged, for example, that Defendant disclosed her use of its "Website and Online Platforms to: find medical providers; to research treatments; to search for treatment information; to pay for medical services; and Plaintiff used the patient portal to schedule appointments, review test results, and more" and that the information disclosed included "The pages and content Plaintiff viewed'" "Plaintiff's seeking of medical treatment;" "Plaintiff's status as a patient;" "Information regarding Plaintiff's patient portal activity;" "The specialties of the medical providers Plaintiff searched for and viewed;" "the names of the medical providers Plaintiff searched for and viewed;" "the search results that Plaintiff clicked on;" "the medical services Plaintiff viewed; and," "Plaintiff's identity." Compl. ¶¶ 131, 138. **As the Northern District of Illinois has explained multiple times in this very context, these allegations are sufficient.** *See Kurowski IV*, at *1 (protected medical information "includes, for example, the name and location of a patient's personal physician, the physician's specialty, and the patient's conditions"); *Kurowski III*, at *2-3 (same); *Aspen Dental*, at *1 ("[defendant's] tracking pixels are configured to collect Users' sensitive health information, such as their status as patients, medical appointments, healthcare providers, medical conditions, and treatments"); *Loyola*, at *2 (plaintiff "researched providers who treat certain medical conditions, communicated with said providers, scheduled appointments for said conditions, and reviewed her personal health information, including test results and prescriptions, on [defendant's] online platform"); *Hartley*, at *2 ("[plaintiff] alleges that [defendant] disclosed that she was seeking specific medical

specialists, [that] she sought to obtain prescriptions of various medications, [that] she was seeking information about sexually transmitted diseases…”). Defendant’s first challenge thus fails.

Furthermore, Plaintiff sufficiently alleged damages. Plaintiff pleads actual, economic damages. *See, e.g.,* Compl. ¶¶ 140, 151, 161 (pleading monetary damages, lost benefit of her bargain, lost value of Private Information and diminution in value, lost use of Private Information without compensation, lost time and money incurred to mitigate and remediate the effects of use of Private Information, and lost value to Plaintiff and Class Members of surrendering their choices to keep their Private Information private and allowing Defendant to track their data). Illinois law is clear: “A defrauded purchaser is entitled to damages which will give him the ‘benefit of his bargain’”—a harm which Plaintiff alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) (“The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of “personal” information, E.g., information relating to the patient’s mental or physical condition or the physician’s diagnosis or treatment.”); Plaintiff further alleged decreased value of her private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant’s unauthorized sale of Plaintiff’s Private Information, and increased risk of future harm. Compl. ¶¶ 272, 285; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include “loss of the economic value of purchases”). And Plaintiff’s mitigation allegations are sufficient. *See Krupa*, at *2, n. 1 (defendant “would then have to go on to show that [plaintiff’s] mitigation damages and the potential “imminent harm” of identity theft are likewise insufficient harms, which it cannot do.”). Defendant does not even engage with these allegations.

As the Southern District of Indiana has explained in the similar data breach context,

analyzing a breach of contract claim, "[t]he measure of a bailor's damages is the amount that will compensate him or her for the actual loss proximately resulting from the bailee's negligence or willfulness.'" *Krupa*, at *4-5 (finding injury sufficiently alleged to survive a 12(b)(6) motion to dismiss where plaintiff alleged defendant "held his personal data subject to a shared understanding that it would remain confidential, but that [defendant] negligently exposed that data"). This is contrary to the inapposite *Flores*. Furthermore, "even where actual damages are unproven, nominal damages are available for breach of contract." *Id.* "And [n]ominal damages can be, and sometimes are, awarded for the loss of personal property where the plaintiff proves defendant's liability but cannot prove any basis for assessing value to the chattel in question.'" *Id; see also Loyola*, at *4, 10 (finding extremely similar common law and statutory claims meritorious, and specifically finding the plaintiffs sufficiently pleaded harm and standing, explaining: "[t]he alleged disclosure of the plaintiffs' sensitive health information...[is] sufficient, at this early stage in litigation, for the Court to conclude that the plaintiffs' allegations sufficiently resemble the type of loss protected by the tort of public disclosure of private information such that the loss constitutes an injury-in-fact...'fairly traceable' to [defendant's] online platform...[and] both the alleged disclosure of the plaintiffs' medical information, as well as the risk of future harm from subsequent disclosures, is redressable by this Court."). Plaintiff's claims here are likewise sufficient.

### C. PLAINTIFF PROPERLY PLEADED INVASION OF PRIVACY

#### *i. Defendant intentionally intruded on plaintiff's seclusion*

Plaintiff sufficiently pleaded her invasion of privacy claim by alleging she had a reasonable expectation of privacy and Defendant intruded on Plaintiff's solitude, seclusion, and private affairs by utilizing invisible pixel trackers to disclose Plaintiff's Private Information to unauthorized third parties. Compl. ¶¶ 247-252. This is sufficient at the pleadings stage. *Spiegel v. McClintic*, 916 F.3d 611, 619 (7th Cir. 2019) (a successful intrusion upon seclusion claim consists of a deliberate

intrusion, highly offensive to a reasonable person, on a private matter, and the plaintiff suffered).

Defendant contends that Plaintiff's claim must fail because she voluntarily provided her information, including her PII and PHI, to Defendant via its website. MTD p. 13. This again is in direct contradiction to the law and ignores the facts pleaded in the Complaint. And courts across the country allow invasion of privacy claims under these circumstances. *See* Exhibit A-7.

Moreover, Plaintiff cannot be said to have "voluntarily" provided her Private Information when the tracking technologies employed by Defendant were invisible to users and Defendant, a healthcare provider, made affirmative representations to Plaintiff, who is its patient, that it was not disclosing or selling her personally identifying information. Compl. ¶¶ 87-128. Further, Plaintiff, as Defendant's patient, bore an additional reasonable expectation that the Private Information she shared with her medical provider would be kept private. *See Yates v. El-Deiry*, 160 Ill. App. 3d 198, 202 (1987) ("the public policy favoring the sanctity of the doctor-patient relationship is reflected in the fiduciary relationship that exists between a doctor and his patient.").

*ii. Defendant's intrusion was into private matters that are highly offensive*

Defendant next argues Plaintiff's claim should be dismissed because her allegations—the collection and disclosure of personal information, including protected health information her healthcare provider, to unauthorized third parties—are not "highly offensive" conduct. MTD p. 13-14. In support, Defendant relies heavily on *Busse v. Motorola, Inc.*, an inapposite case that does not involve the disclosure of protected health information. 351 Ill. App. 3d 67 N.E.2d 1013 (Ill. App. Ct. 2004) (finding plaintiff failed to cite any relevant cases recognizing social security numbers as private information and that "names telephone number [and] addresses" alone were not personal information). Here, Plaintiff alleged that she provided Defendant, her healthcare provider, her Private Information (including her identity, IP address, status as Defendant's patient, her medical treatment, and activities on Defendant's website, including the content she viewed,

the parameters of doctor searches, and search terms) in order to receive treatment and care. Compl. ¶¶ 87-124, 129-140. Courts across the country find such allegations sufficient at this stage. *See* Exhibit A-7.

Defendant failed to meet its burden to point the Court to any relevant authority suggesting that such information would not be offensive or objectionable. *See generally* MTD p. 13-14. Plaintiff's allegations must be accepted as true and construed in a light most favorable to the Plaintiff at this stage and Defendant's motion on this point should be denied.

**D. PLAINTIFF PROPERLY PLEADED BAILMENT**

Plaintiff sufficiently alleged her bailment claim. Under Illinois law, to establish a bailment claim, a Plaintiff must allege (1) an agreement by the bailor to transfer, and the bailee to accept, exclusive possession of goods for a specified purpose, (2) actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, (3) acceptance of exclusive possession by the bailee, and (4) consideration. *Kirby v. Chicago City Bank*, 82 Ill. App. 3d 1113, 1116 (App.Ct.Ill. 1980). Plaintiff alleged just that: she agreed to entrust her Personal Information to Defendant, which Defendant accepted, Defendant had exclusive possession, and the parties exchanged consideration in the form of monetary compensation and Private Information in exchange for medical services and confidentiality of Private Information. Compl. ¶¶ 289-95. As the Southern District of Indiana found that when a defendant held onto personal data subject to a shared understanding that it would remain confidential, and then subsequently exposed it, "[plaintiff] need[s] nothing more to establish a breach of bailment claim." *Krupa*, at *5.

Defendant argues Plaintiff alleged no agreement to return her data. But Defendant's argument is a mere sleight of hand which ignores the facts and the law. Plaintiff entrusted her Personal Information to Defendant under the expectation that Defendant would protect it. "Entrusting your stuff to others is a bailment." *Krupa*, at *3. One may expect "[a]t the end of the

term of bailment, [that] the bailed property is to be returned to the owner." *Id.* "*Or a bailment may last indefinitely, in which case the bailee has a continued duty of safekeeping.*" *Id.* (emphasis added). This is evident from Illinois' longstanding recognition of constructive bailments, where a person who lawfully acquires possession of another's property and holds it under circumstances that require them to keep it safely is treated as a bailee. *See, e.g., Lewis v. State*, 38 Ill. Ct. Cl. 254, 255 (1985). As the Southern District of Illinois explained:

> There is a common-sense expectation—which [defendant] implicitly recognizes through its attempts at data security—that social security numbers are best kept private and that their exposure to hackers is a harm …Consumers are willing to give out their social security numbers in exchange for the benefits and services [defendant] and others provide, **but that willingness is conditioned on the understanding that the business will take at least reasonable steps to ensure that their personal data is not misused**. The picture, then, is one of entrustment: consumers entrust their data to firms with the expectation that those firms take reasonable care against data breaches. Sounds like common sense, and sounds like common law: fortunately, the two align.

*Krupa*, at *2-3. Plaintiff alleges a constructive bailment: the parties "contemplated a mutual benefit bailment when [Plaintiffs] transmitted their Private Information to Defendant solely for treatment and the payment thereof." Compl. ¶ 290. Defendant's motion to dismiss should be denied.

### E. PLAINTIFF PROPERLY PLEADED VIOLATION OF THE ILLINOIS EAVESDROPPING STATUTE

Plaintiff's Illinois Eavesdropping Statute ("IES") claim is sufficiently pleaded. Plaintiff alleged Defendant intentionally employed third-party source code to intercept and disclose her Protected Information to third parties without her consent—a tortious violation of Illinois law as recognized by multiple Northern District of Illinois courts. *See Kurowski IV*; *Kurowski III*; *Aspen Dental*; *Loyola*; *Kurowski II*; *Hartley*; *see also* Exhibit A-10 (orders allowing wiretap claims).

Defendant argues that Plaintiff's claim fails because the IES "only applies to a person who is 'not a party' to the communication" and Defendant was a party to it. MTD p. 16 *citing Zak v. Bose Corp.*, 2019 U.S. Dist. LEXIS 54871, at *4 (N.D. Ill. Mar. 31, 2019). Defendant misstates

the law. First, *Zak* involved the alleged disclosure to third parties of consumer's "music and audio files" played through the defendant's wireless products. *Zak*, 2019 U.S. Dist. LEXIS 54871 at *1. However, this is not a case about the disclosure of songs played on Spotify – this is a case about the disclosure of Private Information, including sensitive protected health information, of healthcare patients by their healthcare provider – facts that *Zak* did not analyze. Second, unlike *Zak*, where the court addressed claims under section 5/14-2(a)(3) of the IES, Plaintiff brings a claim, *inter alia*, under 720 ILCS 5/14-2(a)(2) of the IES, which states:

> (a) A person commits eavesdropping when he or she knowingly and intentionally:
> …
> (2) Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private *conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation*.

720 ILCS 5/14-2 (emphasis added).

Indeed, the court in *Loyola* recently rejected this identical argument, noting those plaintiffs:

> allege violations based on use of an eavesdropping device 'for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party.' **That [defendant] is alleged to have been a party to the intercepted communications is, thus, not fatal to the plaintiffs' claim.**

*Id*. at *25-26 (emphasis added, internal citation omitted). Defendant's argument is legally wrong.

Defendant next argues that the IES "only applies if the Plaintiff alleges actual damages." MTD p. 16. This argument too, is without merit. First, the plain text of IES belies Defendant's position. 720 ILCS 5/14-6 ("*Any or all parties* to any conversation or electronic communication upon which eavesdropping is practiced contrary to this Article *shall* be entitled to the following remedies…") (emphasis added). As the court in *Kurowski IV* noted, "unlike some Illinois statutes, the Eavesdropping Act does not expressly require that a plaintiff show 'actual damage' to seek recovery…a party can suffer an injury – such as a privacy violation – without suffering economic

harm." *Id.* at *8. Second, as already discussed, Plaintiff has pleaded actual damages. Therefore, Defendant's "actual damages" argument contradicts the facts and the law. Its motion thus fails.

### F. PLAINTIFF PROPERLY PLEADED VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT

As already discussed, Plaintiff sufficiently alleged damages, and (as that is the only element Defendant challenges) her ECPA claim. Defendant, apparently confusing the ECPA with the Privacy Act of 1974, argues that "18 U.S.C.A. § 2707(c) only permits an assessment of 'actual damages suffered by the plaintiff…'" and, for this reason, the Supreme Court held in *Doe v. Chao*, 540 U.S. 614, 627 (2004) that "a plaintiff may not recover under the act unless they sustained actual damages." MTD p. 17. Defendant is wrong for numerous reasons, including that it applies a standard from the wrong statute.

First, Plaintiff pleads that she suffered actual damages when Defendant took Plaintiff's Private Information and sold it to Facebook and other third parties without her knowledge or authorization. Compl. ¶¶ 13, 128, 129-139, 177. Plaintiff alleges actual damages in the decreased value of her Private Information and a portion Defendant's profits from selling her Private Information because she did not receive the data security protections for which she paid. *Id.* ¶ 140.

Second, *Chao* did not address the damages provision of the ECPA. Instead, *Chao* decided "whether individuals adversely affected by a federal agency's violation of the *Privacy Act of 1974*. . . must prove some actual damages to qualify for a minimum statutory award of $1,000." 540 U.S. at 616 (emphasis added). The Court then analyzed the *Privacy Act of 1974*'s damages provision. *Id.* at 616, 627. In its ruling, the Court expressly distinguished the Privacy Act of 1974 with the ECPA when it considered the plaintiff's argument that the statutes used similar language. *Id.* at 626. The Court reasoned, "the trouble with [plaintiff's] position is its reliance on the legislative histories of *completely separate statutes passed well after the Privacy Act*." *Id.* (emphasis added).

Indeed, Defendant's argument was rejected by a district court in the Northern District of Illinois in *Cedar Hill Assocs. v. Paget*, 2005 U.S. Dist. LEXIS 32533 (N.D. Ill. Dec. 9, 2005). There, the court held that although the "language at issue in the Privacy Act is admittedly very similar to the language in the ECPA…the legislative history of the ECPA indicates that actual damages were to be included in a damage award, but not the exclusive award." *Id*. at *8-9.

Similarly, the court in *Brooks Group & Assocs. v. LeVigne,* held that the ECPA's "structure and language are materially different from that found in the Privacy Act." 2014 U.S. Dist. LEXIS 52479 at *35 (E.D. Pa. Apr. 15, 2014). The court explained that the provision of the Privacy Act creating a civil action "is silent on the subject of when and what a plaintiff is entitled to recover." *Id*. at 36. Section 2707(a) of the ECPA, in contrast, establishes a private right of action and states that "a person aggrieved who establishes a knowing or intentional violation is entitled to some recovery under the statute by virtue of section 2707(a)'s own force… Thus the ECPA's damages section imposes no liability independent of 18 U.S.C. § 2707(a), but it provides a method of damages calculation, which in no event shall be less than $1,000." *Id*.

Accordingly, Defendant's attempt to shoehorn an analysis of the damages provision of the Privacy Act of 1974 and apply it to the ECPA should be rejected and its motion to dismiss Plaintiff's claim should be dismissed.

### G. PLAINTIFF PROPERLY PLEADED VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

Plaintiff sufficiently alleged her CFAA claim as, again, she sufficiently alleged damages. As Defendant admits, 'damage' is defined under the CFAA as "any impairment to the integrity or availability of data […] or information." *Id. citing Farmers Ins. Exch. v. Auto Club Grp.,* 823 F.Supp.2d 847, 852 (N.D. Ill., 2011). As extensively addressed above, Plaintiff alleges damages by way of the decreased value of her Private Information and a portion Defendant's profits from

selling her Private Information because she did not receive the data security protections from Defendant for which she paid. Compl. ¶ 140. Defendant cites no legal authority supporting its contention that this is not sufficient at this stage.

Defendant also contends Plaintiff did not sufficiently allege Defendant "exceeded authorize access." MTD p. 19. Not true. Plaintiff alleges that Defendant exceeded its authorized access to Plaintiff's protected computers when it surreptitiously implemented pixel trackers on its website to disclose Plaintiff's Private Information. Compl. ¶¶ 87-124, 129-140. This is sufficient at this time. *Griffith v. TikTok, Inc*., 2023 U.S. Dist. LEXIS 223098, at *14 (C.D. Cal. Dec. 13, 2023) (finding the implementation of pixels on defendant's website to collect personal data and deliver personal ads constitutes a violation of the CFAA); *see also In re Toys R Us, Inc., Priv. Litig.*, 2001 WL 34517252, at *11 (N.D. Cal. Oct. 9, 2001) (holding that allegation that defendants caused a cookie to be implanted in plaintiffs' computers stated a claim under the CFAA).

Defendant cites *Van Buren* to argue that it did not "exceed" its "authorized access." MTD p. 18-19. But Plaintiff alleged Defendant had *no* authorized access to disclose her data. Compl. ¶ 10 ("Defendant knowingly configured and implemented into its website...trackers...without patients' knowledge or authorization"). This violates CFAA; for one thing, "*Van Buren's* holding applies only to the exceeds authorized access prong and did not similarly limit the scope of the other provisions of the CFAA, including the without authorization prong." *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). Third parties like Facebook and Google had *no authorization* to access Plaintiff's computer and any further question is one of fact. *See, e.g.*, *United States v. Thompson*, 2022 WL 834026, at *4 (W.D. Wash. Mar. 21, 2022) ("Any argument that mistake or technological process rendered defendant 'authorized' is properly

resolved by the trier of fact.”).[7]

Defendant does not even attempt to argue it had unfettered authorization to access Plaintiff’s computers and information—of course it did not. Defendant did not have, for example, “administrative access to [plaintiff’s] servers and systems.” *Anaya v. Birck*, 2024 WL 2209345, *11 (N.D. Ill. May 16, 2024). This alone requires discovery to determine what data Defendant accessed and whether such access “exceeded” Defendant’s authority under its contracts with Plaintiff and the law. *See, e.g.*, *Moonlight Mt. Rec. v. McCoy*, 2024 WL 4027972, at *4 (D. Idaho Sept. 3, 2024) (under CFAA, “questions regarding a person’s authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries.”) Accordingly, Defendant’s motion should be denied.

### H. PLAINTIFF PROPERLY PLEADED HER CLASS ACTION CLAIMS

Dismissing Plaintiff’s class allegations is inappropriate at this stage. Class certification should be considered on a motion for class certification, and not before. *See, e.g., Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022) (“if a class plaintiff satisfies all the requirements of Rule 23(a) and Rule 23(b), the class must be certified, even if it is sure to fail on the merits”); § 1785 Determination Whether Class Action Should be Certified, 7AA Fed. Prac. & Proc. Civ. § 1785 (3d ed.) (“Compliance with the class-certification rules is not to be tested by a motion to dismiss for failure to state a claim”). Anyway, Defendant argues only that the class claims should be dismissed based on the merits of the individual claims. As Plaintiff has demonstrated at great length above, each of her individual claims survives. So too should her class claims.

## V. CONCLUSION

[7] Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023) (“Ownership [of the server] does not matter. It makes no difference that [defendant] does not own the servers (presumably [a third party] does).” (citation omitted)).

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Dated: January 13, 2025

Respectfully submitted,

*/s/ Lynn Toops*
Lynn A. Toops
Mallory K. Schiller (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
mschiller@cohenandmalad.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina C. Borrelli (*Pro Hac Vice* forthcoming)
STRAUSS BORRELLI, PLLC
980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
sam@straussborrelli.com
raina@straussborrelli.com

J. Gerard Stranch, IV
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

***Counsel for Plaintiff and the Proposed Class***